<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EXCELSIOR INSURANCE COMPANY, <br> *Plaintiff*, | : <br> : <br> : |
| v. | : <br> : Civil No.: 20-18132 (KSH) (CLW) |
| SELECTIVE INSURANCE COMPANY OF AMERICA, <br> *Defendant*. | : <br> : <br> : <u>**OPINION**</u> |
| and | : <br> : |
| SELECTIVE INSURANCE COMPANY OF AMERICA, <br> *Third-Party Plaintiff*, | : <br> : <br> : |
| v. | : <br> : |
| MACY'S, INC. and CARPEL CLEANING CORPORATION, <br> *Third-Party Defendants*. | : <br> : <br> : |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.     Introduction**

This action seeks to determine the insurance coverage obligations of defendant/third-party plaintiff Selective Insurance Company of America ("Selective") to third-party defendants Carpel Cleaning Corporation ("Carpel") and Macy's, Inc. ("Macy's"), in connection with a separate negligence action pending in New York state court.  Before the Court are summary judgment motions filed by **(i)** Selective (D.E. 47), **(ii)** plaintiff Excelsior Insurance Company ("Excelsior," which issued a policy to Carpel as named insured and initially provided it with a defense in the negligence action) and Carpel (D.E. 49), and **(iii)** Macy's (D.E. 48), which collectively seek to resolve the majority of the parties' disputes over coverage.

1

Although the case began with Excelsior's broad claims for declaratory judgment that Selective must defend and indemnify Carpel, the live dispute between Excelsior (and, nominally, Carpel) and Selective is now far narrower because Selective agreed more than three years ago to defend Carpel in the negligence action and has undertaken to provide that defense. As such, the Court need only address whether Selective owes Excelsior reimbursement for past defense costs expended for Carpel before June 4, 2020. It does not; summary judgment is warranted in Selective's favor on that issue and against Excelsior.

With respect to Macy's, however, Selective has declined to offer it a defense and maintains it is not entitled to coverage because the policy requirements for additional insured status have not been satisfied. Macy's asserts that Selective does owe it coverage and disputes Selective's interpretation of the relevant subcontract and policy language. Having reviewed the parties' dueling motions on this issue, the Court concludes that Selective has the better of the argument, and that summary judgment is warranted in its favor and against Macy's on that portion of the Macy's counterclaim.

## II.   Background

### A.  Genesis of the Coverage Dispute

In August 2015, Janice Cocomello filed a personal injury lawsuit in New York state court alleging that on April 18, 2015, she slipped and fell at a Macy's store on Baychester Avenue (the "Baychester store") in Bronx, New York. (D.E. 46, Final Pretrial Order ("FPTO"), § 3, Stipulation of Facts ¶¶ 1-2.) In that action (the "Underlying Action"), Cocomello has sued Macy's and Carpel, which had a contract with Macy's to provide cleaning and housekeeping services for various store locations, including, by way of a contract amendment, the Baychester store. (*Id.* ¶¶ 1, 9.) Carpel became a defendant in that action by way of an amended complaint

2

filed on November 3, 2015.  (D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 1; D.E. 49-6, Jones Decl., Ex. 2.)

Excelsior issued a commercial general liability insurance policy to Carpel as the named insured effective October 10, 2014 to October 10, 2015.  (FPTO, § 3, Stipulation of Facts ¶ 15; D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 14.)  Once it was on notice of the Underlying Action, which it asserts was approximately February 19, 2016 (D.E. 49-6, Jones Decl., 2nd ¶ 5),[1] Excelsior retained counsel to defend Carpel.  (FPTO, § 3, Stipulation of Facts ¶ 3.)  It also paid Carpel's defense fees and costs from March 16, 2016 to February 14, 2022.  (*Id.*)

On February 14, 2022, Selective began paying for Carpel's defense.  (D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 3.)  Selective's role arises from its obligations under an insurance policy it issued to CCC Cleaning, LLC ("CCC") for the period of October 10, 2014 through August 1, 2015 ("the Selective Policy").  (FPTO, § 3, Stipulation of Facts ¶ 18; D.E. 47-2, Selective R. 56.1 Stmt. ¶ 20.)  In 2012, Carpel entered into a subcontract with CCC, pertaining to specified Macy's locations.  (FPTO, § 3, Stipulation of Facts ¶ 10.)  According to Carpel and Excelsior, under the subcontract CCC agreed to perform the "cleaning and housekeeping work called for in the [Macy's-Carpel] Master Contract."  (D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 9.)[2] The Baychester store was added to the list of locations CCC serviced through a work order Carpel signed on August 1, 2014.  (FPTO, § 3, Stipulation of Facts ¶ 11.)  Under the Carpel-CCC subcontract, CCC "retain[ed] exclusive control over the methods and details of the services

---

[1] The Jones declaration has two paragraphs numbered "5" and two numbered "6."

[2] Selective counters that the subcontract "does not list or identify any duties, work, or services that CCC was to perform, nor does not [sic] reference or incorporate the Master Contract," and asserts that Macy's had the right under the master contract to use other service providers and its own employees for housekeeping matters.  (D.E. 53, Selective Resp. to Excelsior R. 56.1 Stmt., ¶ 9.)

required pursuant to this agreement." (*Id.* ¶ 14.)  Accordingly, in August 2016, Carpel filed a third-party complaint against CCC in the Underlying Action, alleging that the Baychester store had been under CCC's control at the time of the accident, and that any injuries Cocomello suffered arose from CCC's negligence.  (*Id.* ¶ 7; D.E. 49-6, Jones Decl., ¶ 7 & Ex. 4.)

The Carpel-CCC subcontract required CCC to maintain insurance that named Carpel (and upon Carpel's request, "the owner of premises where services are performed and any other persons designated by [Carpel]") as an additional insured, and required coverage to include comprehensive general liability insurance in the minimum amount of $1,000,000.  (D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 12.)  It also required CCC to deliver a certificate of insurance to Carpel as follows:

> 13. No later than 10 days prior to commencement of work, [CCC] shall deliver to [Carpel] an original Certificate of Insurance  evidencing the above stated coverage's [sic] and that [Carpel] has been named as an additional insured.  The Certificate shall be endorse[d] to provide that:
> Insurance evidenced by the certificate shall be primary and non-contributory to all other insurance or self-insurance of [Carpel] . . . .

(*Id.* ¶ 13, *see also* D.E. 49-8, S. Carpel Decl., ¶ 9 & Ex. 11 at § 13 (subcontract).)

CCC, in turn, secured the policy with Selective referred to earlier.  That policy provides that Selective "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and that Selective has "the right and duty to defend the insured against any 'suit' seeking those damages," and "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  (D.E. 47-2, Selective R. 56.1 Stmt., Ex M (Selective Policy), CG 00 01 12 07, at 1 of 16, ¶ 1(a).)  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  (Selective Policy, CG 00 01 12 07, at 13 of 16, ¶ 3.)  The term "insured" is

defined as "any person or organization qualifying as such under Section II – Who Is An Insured." (Selective Policy, CG 00 01 12 07, at 1 of 16.) By endorsement, "Who Is An Insured" includes the following:

> **Blanket Additional Insureds – As Required by Contract**
>
> Subject to the **Primary and Non-Contributory** provision set forth in this endorsement, **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured any person or organization who you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your ongoing operations, "your product", or premises owned or used by you . . . .
>
> . . .
>
> The provisions of this coverage extension do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury."

(Selective Policy, CG 72 02 12 11, at 5 of 8; *see also* D.E. 47-2, Selective R. 56.1 Stmt., ¶ 23.)

In a letter dated June 9, 2016, several months after Excelsior had retained counsel for Carpel in the Underlying Action and begun paying Carpel's defense fees, Excelsior requested that CCC defend and indemnify Carpel against the claims in that action. (D.E. 47-2, Selective R. 56.1 Stmt., ¶ 24; D.E. 49-6, Jones Decl., Ex. 6 (6/9/16 ltr.).)[3] That letter, which is written on

---

[3] Excelsior characterizes the letter as a request on behalf of Macy's (as well as Carpel), which Selective disputes, noting that the letter "makes absolutely no reference to a request that CCC defend or indemnify Macy's." (D.E. 53, Selective Resp. to Excelsior R. 56.1 Stmt., ¶ 20.) The Court need not wade into this dispute because, as discussed *infra*, Macy's is not entitled to additional insured coverage under the Selective Policy, making irrelevant any questions about the date it purportedly tendered its defense to Selective.

Liberty Mutual letterhead and refers to the policy written through Excelsior, is addressed to CCC

and includes the following language:

> The purpose of this letter is to put your company on notice of a lawsuit wherein Ms. Cocomello alleges she slipped and fell on an unknown substance on the floor at Macy's (250 Bay Chester Ave., Bronx, NY 10475).  Your firm was under contract to provide the cleaning/porter services at the above location.  As per the terms of the contract, we are requesting that CCC provide defense and indemnity as well as additional insured status to Carpel Cleaning.
>
> If you have not already so [sic], please notify your liability insurance carrier of this matter.
>
> Please accept this as a formal tender letter to take over the handling of this claim on behalf of Carpel Cleaning.

(D.E. 49-6, Jones Decl., ¶ 13 & Ex. 6.)  Selective denies receiving this letter.  (D.E. 53, Selective

Resp. to Excelsior R. 56.1 Stmt., ¶¶ 20-21.)

For the next several years, Excelsior continued paying for Carpel's defense in the

Underlying Action.  Coverage issues were, however, playing out behind the scenes.  On April

26, 2017, Selective filed a declaratory judgment action in New Jersey state court against CCC;

its principal, Edgardo Gonzalez; Macy's; and Carpel.  (D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 22.)

Selective's complaint asserted that CCC was involved in multiple lawsuits pending in New York

state court, including the Underlying Action, and that in each matter, "CCC . . . has been named

as a defendant or a third-party defendant, **or** Macy's Inc. and/or Carpel Cleaning Corporation

have tendered a demand for additional insurance coverage or contractual indemnification with

respect to the performance of cleaning services by CCC . . . ."  (*Id.* (emphasis added).)

The complaint further asserted that "[s]ubsequent to the tender of each claim, the

Selective adjuster assigned to handle the case sent an initial correspondence to CCC . . . and its

principal, Edgardo Gonzalez, confirming the tender of the claim by either the underlying

plaintiff, [CCC's] insurance producer, Macy's **or** Carpel Cleaning Corporation."  (*Id.* (emphasis

added); *see also* D.E. 49-5, O'Connor Decl., Ex. 7 (2017 Decl. Jdt. Compl.).)[4]  Alleging that

CCC and Gonzalez never responded to Selective's initial correspondence or any follow-ups,

Selective sought a declaration that it was not required to defend or indemnify CCC or Gonzalez

in any of the matters listed in the complaint (including the Underlying Action) based on their

failure to cooperate with Selective as required by the policy.  (*See* 2017 Decl. Jdt. Compl. ¶¶ 9-

11, 16-19.)[5]

In March 2018, a claims representative for Excelsior, Thomas Dooley, spoke with

Michael Parlin, a Selective litigation specialist.  (*See* D.E. 49-4, Excelsior R. 56.1 Stmt., ¶¶ 23-

25.)  Parlin's log notes about the call stated the following:

> Called Liberty Mutual (carrier for Carpel) to determine their position and spoke to
> Thomas Dooley.  They have not picked up the defense of Macy's.  It is his
> position that our insured should pick up their tender; he was aware of our
> coverage position.  He will not make an offer until Macy's deposition is
> completed and said that Macy's does not typically make an offer until discovery
> is completed.

(D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 23.)

In a letter dated June 4, 2020, counsel for Excelsior sent a letter to Parlin at Selective

purporting to "follow up on Excelsior's prior tender of June 9, 2016 . . . , which we understand

---

[4] Selective objects on various grounds to Excelsior's citation to this complaint and contests its
import, as discussed further *infra*, but admits that the complaint did contain the cited language.
(D.E. 53, Selective Resp. to Excelsior R. 56.1 Stmt., ¶ 22.)

[5] The full picture of that case's disposition is not evident in the record before this Court.
Selective has represented that its complaint and counterclaims filed by Carpel and Macy's were
dismissed by stipulation on November 2, 2018. (D.E. 56, Selective Reply Br. in Supp. Mot.
Summ. J. 2.)  In its answer in this action, however, Selective also stated that default judgment
had been obtained against CCC and Gonzalez, and attached the relevant order, which is dated
January 18, 2018.  (D.E. 4, Selective Ans., Counterclaim ¶ 10 & Ex. A.)

was forwarded to you." (D.E. 47-2, Selective R. 56.1 Stmt., ¶ 3, Ex. B (6/4/2020 Ltr.).)[6]  The

letter continued:  "The tender was and is based both upon the contractual obligation of [CCC] to

defend and indemnity [sic] [Macy's] and [Carpel] and based upon the obligation of [Selective] . .

. to defend and indemnify Macy's and Carpel as additional insureds under an insurance policy

issued to CCC." (*Id.*)  The letter contended that "Carpel specifically requested that CCC include

Macy's as an additional insured on CCC's policies," and that pursuant to the subcontract,

"Carpel did not actually perform any maintenance or cleaning services at the Macy's store.

Rather, CCC assumed and handled all such operations." (*Id.*)  The Baychester store, the letter

continued, "is one of the sites where CCC performed the maintenance and cleaning operations

for Macy's and Carpel," and a "copy of the Work Order including the Macy's is enclosed for

your review." (*Id.* at 1-2.)  Because the plaintiff in the Underlying Action had alleged

negligence in the performance of cleaning services, and "the entirety of Carpel's maintenance

and cleaning obligations to Macy's were assigned to CCC under the Subcontract," Excelsior took

the position that the alleged injury was caused "in whole or in part" by "CCC's ongoing

operations at the [Baychester store]." (*Id.* at 2.)  In closing, Excelsior wrote that it "again

demand[s] that Selective accept the defense and indemnity of Macy's and Carpel for Ms.

Cocomello's claim." (*Id.*)

Selective responded by letter of July 1, 2020.  (D.E. 47-2, Selective R. 56.1 Stmt., ¶ 4,

Ex. C (7/1/2020 Ltr.).)  Asserting that the June 4, 2020 letter was "the first written tender request

Selective has received for Macy's Inc., and Carpel Cleaning Corp., in relation to [the Underlying

Action]," Selective went on to state that "As of the date of this letter, Selective will provide a

---

[6] The parties dispute the import and legal consequences of this letter and subsequent similar exchanges, but not that the letters were in fact exchanged or their contents.

defense pursuant to a reservation of rights to Carpel Cleaning Corp. for the claims asserted

against it in the [Underlying Action]." (*Id.* at 1-2.) It disclaimed coverage for Macy's "because

it is not an 'additional insured' under the Policy and no other provisions of the Policy trigger

coverage for Macy's, Inc. for these claims." (*Id.* at 2.) After outlining language from the

subcontract and the Selective Policy and their application to the facts, the letter continued:

> Beginning as of the date of this letter, Selective will provide a defense for Carpel . . . for the allegations against it in the above-referenced Lawsuit. Because this is the first written tender, Selective will not reimburse defense costs already expended for Carpel['s] . . . defense against the Lawsuit to date. This defense is made pursuant to a full reservation of rights to restrict or deny full or partial coverage, in addition to taking other positions or actions that may affect coverage.

> Selective has no duty or obligation to provide a defense and/or indemnity to Macy's, Inc. for the claims against it in the above-referenced Lawsuit, and therefore denies coverage to Macy's, Inc. for that lawsuit. The subcontract does not require that Macy's, Inc. be added as an additional insured to the Policy. Accordingly, Macy's, Inc. does not qualify as an additional insured, and Selective has no obligation to defend or indemnify it in relation to the subject Lawsuit.

(*Id.* at 5.) The parties' correspondence apparently continued, and in an August 20, 2020 letter,

Selective reiterated its position that under the terms of its policy to CCC, a reservation of rights

was appropriate as to Carpel's entitlement to coverage, and that Macy's was entitled to no

coverage at all. (D.E. 49-6, Jones Decl., Ex. 5 (Selective 8/20/2020 ltr.).) Selective also

reaffirmed its position that "the first written tender of Carpel's defense in Selective's possession

is dated June 4, 2020." (*Id.* at 3.) To date, Selective has reimbursed Excelsior for defense costs

in the Underlying Action in the amount of $3,458.44, which represents costs for the period since

June 4, 2020. (D.E. 47-2, Selective R. 56.1 Stmt., ¶ 5.)

### B. Procedural History

On July 2, 2020, Excelsior filed the present declaratory judgment action against Selective

in state court. In count 1, Excelsior seeks a declaration that Selective owes a duty to defend and

indemnify Carpel and Macy's in the Underlying Action on a primary basis. (*See* D.E. 1, Ex. A,

Compl. ¶¶ 34-35.)  In count 2, Excelsior seeks a money judgment against Selective for the fees and costs it incurred for defending Carpel in the Underlying Action.  (*Id.* ¶¶ 40-43.)  It also requests an award of the attorney's fees incurred in prosecuting the declaratory judgment action.

Significantly, at the time the complaint was filed, it appears Excelsior had not yet received Selective's July 1, 2020 letter agreeing to defend Carpel pursuant to a reservation of rights.  (*See* Compl. ¶¶ 30-31 ("Excelsior renewed its tender by letter, dated June 4, 2020, demanding that Selective defend and indemnify Carpel and Macy's in the Cocomello action. *CCC and Selective have denied, or otherwise failed to respond to Excelsior's tender*." (emphasis added)).)

On December 4, 2020,[7] Selective removed the action to this Court, asserting diversity jurisdiction.  (D.E. 1, Notice of Removal.)  In its answer (D.E. 4), Selective brought counterclaims against Excelsior and also brought a third-party complaint against Carpel and Macy's seeking a declaration that it does not owe additional insured coverage to Carpel or Macy's, and that if the Court determines otherwise, the Selective coverage should be deemed excess to the Excelsior policy.  It further asserts that coverage is unavailable to Carpel or Macy's because the accident that gave rise to the Underlying Action was not caused by CCC's "ongoing operations," and that Macy's was not added as an additional insured under the Selective Policy and even if it was, the Selective coverage is excess to any other available coverage.

Excelsior and Carpel answered the counterclaims and third-party complaint.  (D.E. 6.) Macy's also answered, and counterclaimed against Selective for a declaration that Macy's is an additional insured entitled to primary coverage, including a defense and indemnity, under the

---

[7] Selective states it was not served with the complaint until November 4, 2020.  (D.E. 1, Notice of Removal ¶ 4.)

Selective Policy.  (D.E. 15).  Macy's also asserts that it is an additional insured under the Excelsior policy and is entitled to defense and indemnity on a primary basis under that policy as well.  (*Id.*)  Selective answered, and included a crossclaim against Excelsior that the Selective coverage (if any) is either excess to or co-primary with the Excelsior policy.  (D.E. 19.) Excelsior has likewise answered the Macy's counterclaim (D.E. 20) and Selective's crossclaim against it (D.E. 22).

Selective (D.E. 47), Excelsior and Carpel (D.E. 49), and Macy's (D.E. 48) have all filed motions for summary judgment. Selective seeks summary judgment that it has no duty to reimburse Excelsior for Carpel's defense costs in the Underlying Action prior to June 4, 2020, and that it has no duty to defend or indemnify Macy's in the Underlying Action.  It also seeks the dismissal of all claims against it that seek attorney's fees and costs under N.J. Ct. R. 4:42-9(a)(6).  Excelsior and Carpel (D.E. 52) and Macy's (D.E. 55) oppose, and Selective has replied (D.E. 56).

Excelsior and Carpel seek summary judgment that Selective owes a duty to defend and indemnify Carpel in the Underlying Action; that the duty is primary to any duty owned by Excelsior; and that Excelsior is entitled to fees and costs incurred in the Underlying Action prior to June 4, 2020 and incurred to prosecute the instant declaratory judgment action.  Selective (D.E. 53) opposes, and Excelsior and Carpel have replied (D.E. 57).

Macy's seeks partial summary judgment that Selective has a duty to defend it as an additional insured in the Underlying Action and must reimburse Macy's for (a) the defense costs it has incurred since July 26, 2017, and (b) the fees and costs it has incurred in this declaratory judgment action.  Selective (D.E. 54) has opposed, and Macy's (D.E. 58) has replied.

### III.     Standard of Review

Summary judgment is appropriate where the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on the motion, the Court views the evidence in the light most favorable to the nonmoving party and draws all inferences in favor of that party. *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). The movant has the "initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact," after which the burden shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *Carolina Cas. Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 2022 WL 9997385, at *4 (D.N.J. Oct. 17, 2022) (Martini, J.) (cleaned up). "[A]ctual evidence" is required to show the existence of a triable fact issue, and "unsupported assertions, speculation, or conclusory allegations" do not suffice. *Id.*

To preclude summary judgment, a factual dispute must be "genuine," meaning the evidence would permit a reasonable factfinder to return a verdict for the nonmoving party. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). Moreover, the disputed facts must be "material," such that their "'existence or nonexistence might impact the outcome of the suit under the governing law.'" *Carolina Cas.*, 2022 WL 9997385, at *4 (quoting *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)). The Court may not resolve credibility disputes or weigh the evidence in ruling at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The same standards govern when the parties have cross-moved for summary judgment. *Auto-Owners*, 835 F.3d at 402. In that scenario, the Court must "'rule on each party's motion on

12

an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).  "If after review of cross-motions for summary judgment the record reveals no genuine issues of material fact, then judgment will be entered in favor of the deserving party in light of the law and undisputed facts." *Wausau Underwriters Ins. Co. v. State Auto. Mut. Ins. Co.*, 557 F. Supp. 2d 502, 507 (D.N.J. 2008) (Irenas, J.).

## IV.  Discussion

### A.  Selective's Coverage Obligations to Carpel

#### 1.  Duty to Defend/Reimburse

Excelsior's complaint sought a declaration that Selective has a duty to defend Carpel in the Underlying Action.  Although its motion for summary judgment continues to seek that relief, Excelsior concedes that Selective has already accepted the tender of Carpel's defense – and did so back in 2020.  (D.E. 49-2, Excelsior Moving Br. 1-2, 7.)  It also concedes that Selective has been directly paying for Carpel's defense since February 2022 and that it has reimbursed Excelsior for defense costs going back to June 4, 2020.  (*Id.* at 7.)

The Court's authority to issue declaratory judgments only extends to "case[s] of actual controversy within its jurisdiction," 28 U.S.C. § 2201(a), and the actual, current controversy concerning the existence of Selective's duty to defend Carpel is whether it attached earlier than June 4, 2020.  Excelsior itself recognizes that the question before the Court has narrowed. (Excelsior Moving Br. 7 (asserting that "[t]here is $19,021.73 in defense costs at issue in this motion which were incurred after June 9, 2016 and prior to June 4, 2020 that have not been reimbursed").)  In practical terms, the live issue is whether Excelsior is entitled to more reimbursement than it has already received from Selective for past defense costs.

It is well established under New Jersey law that the duty to defend "comes into being" when the relevant complaint "states a claim constituting a risk insured against." *Burlington Ins. Co. v. Northland Ins. Co.*, 766 F. Supp. 2d 515, 530 (D.N.J. 2011) (Debevoise, J.) (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 173 (1992)). Making that determination involves comparing the policy language with the allegations in the complaint, plus "such extrinsic facts demonstrating coverage that are 'properly and promptly' conveyed by the insured." *Id.* (quoting *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 128 N.J. 188, 199-200 (1992)). *Accord Abouzaid v. Mansard Gardens Assocs., LLC*, 207 N.J. 67, 81 (2011); *Flomerfelt v. Cardiello*, 202 N.J. 432, 444 (2010). Doubts concerning whether complaint allegations (and other facts known to the insurer) fit within policy coverage are resolved in the insured's favor, and "conclusive evidence of liability" is not required before the duty to defend kicks in. *Burlington*, 766 F. Supp. 2d at 530. *See also W9/PHC Real Est. LP v. Farm Fam. Cas. Ins. Co.*, 407 N.J. Super. 177, 191 (App. Div. 2009) (duty to defend arises where complaint allegations, upon their face, fall within risk insured against, "irrespective of the claim's actual merit because the duty to defend is broader than the duty to indemnify").

Particularly pertinent here, the duty to defend is only triggered by facts that are "*known* to the insurer." *SL Indus.*, 128 N.J. at 200. "The law does not obligate the insurer to investigate whether something triggered coverage; rather, 'the insured being sued is responsible for promptly conveying to its insurance company the information that it believes will trigger coverage.'" *Am. Fire & Cas. Co. v. Am. Fam. Home Ins. Co.*, 2023 WL 3580836, at *12 (D.N.J. May 22, 2023) (Kugler, J.) (quoting *SL Indus.*, 128 N.J. at 199-200)). Prompt, proper compliance with that requirement entitles the insured to reimbursement for defense costs it previously expended; noncompliance means the insured "cannot demand reimbursement from

14

the insurer for defense costs the insurer had no opportunity to control." *SL Indus.*, 128 N.J. at 200.[8] In short, when an insurer is made aware of the request for a defense as well facts demonstrating that providing a defense is potentially within the parameters of the insurance contract, the insurer is obligated to provide the defense and reimburse the insured for defense costs already expended.

Here, there is no dispute that by June 4, 2020, these conditions were met, and in its response to the June 4 letter, Selective recognized an obligation to provide Carpel with a defense in the Underlying Action.  Excelsior argues, however, that Selective was on notice far earlier, as early as the June 9, 2016 letter addressed to CCC.  As described earlier, that letter requested that CCC "notify [its] liability insurance carrier" of the Underlying Action and that CCC "accept this [letter] as a formal tender letter to take over the handling of this claim on behalf of Carpel Cleaning."  (D.E. 49-6, Jones Decl., Ex. 6 (6/9/16 ltr.).)  But that argument is based on Excelsior's "information and belief" that CCC forwarded the letter to Selective, not upon any competent evidence that such a communication took place.  (*See* D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 21; D.E. 49-6, Jones Decl., ¶ 14 ("Upon information and belief, CCC forwarded the June 9, 2016 letter to Selective.").)

Excelsior argues instead that Selective's "subsequent actions" "clearly evidence" that CCC either forwarded the letter or advised Selective of Carpel's request for a defense. (Excelsior Moving Br. 8.)  Those "subsequent actions" are, specifically, Selective's April 26,

---

[8] "[T]he insurer's duty to defend corresponds to the insured's duty to relinquish control of the defense, and one cannot arise without the other."  *SL Indus.*, 128 N.J. at 200 (quoting *Crist v. Insurance Co. of N. Am.*, 529 F. Supp. 601, 603 (D. Utah 1982)).  Consistent with that principle, the Selective Policy reserves to Selective the "*right* and duty" to defend the insured against suits seeking covered damages.  (D.E. 47-2, Selective R. 56.1 Stmt., Ex M (Selective Policy), CG 00 01 12 07, at 1 of 16, ¶ 1(a) (emphasis added).)

2017 declaratory judgment complaint and the March 2018 conversation between claims

representatives for Excelsior and Selective.

Regarding the 2017 declaratory judgment action, Excelsior cites the following language

from the Selective's complaint:

> 5.      CCC is presently involved in multiple lawsuits that are presently pending
> in the Supreme Court of New York ("the underlying matters"), including:
>
>           …
>
> • Cocomello v. Macy's Inc., et al., Supreme Court of New York, County of
>   Bronx, Index Number 24544/2015E;[9]
>
> …
>
> 6.      In each of the underlying matters as well as an additional alleged slip-and-
> fall matter involving a claimant named Pauline Curtain, CCC Cleaning LLC has
> been named as a defendant or a third-party defendant, or Macy's Inc. and/or
> Carpel Cleaning Corporation have tendered a demand for additional insurance
> coverage or contractual indemnification with respect to the performance of
> cleaning services by CCC Cleaning, LLC.
>
> . . .
>
> 8.      Subsequent to the tender of each claim, the Selective adjuster assigned to
> handle the case sent an initial correspondence to CCC Cleaning, LLC and its
> principal, Edgardo Gonzalez, confirming the tender of the claim by either the
> underlying plaintiff, CCC Cleaning, LLC's insurance producer, Macy's or Carpel
> Cleaning Corporation.

(Excelsior Moving Br. 6.)  To Excelsior, this language "makes clear" that by the time Selective

made those assertions, it was on notice of the "numerous actions" against Carpel relating to

cleaning services subcontracted to CCC, "and that Carpel was looking for additional insured

coverage for such lawsuits, including specifically the Underlying Action."  (*Id.*)  This argument

makes the leap that because Selective knew Carpel was looking for additional insured coverage

for *some* lawsuits, Selective knew it was also looking for coverage for *this* Underlying Action.

---

[9] The original text of this complaint paragraph lists seven actions in addition to the *Cocomello*
case.  (D.E. 49-5, O'Connor Decl., Ex. 7.)

But it was not up to Selective to investigate whether Carpel wanted it to step in and provide a defense; it was up to Carpel to make the request and give Selective the information necessary to conclude that a defense was required under the policy terms and, concordantly, the ability to control that defense.  *SL Indus.*, 128 N.J. at 199-200; *Am. Fire & Cas. Co.*, 2023 WL 3580836, at *12.

The March 2018 conversation is similarly unavailing.  Excelsior relies primarily on the Selective representative's log note, which, again, reads as follows:

> Called Liberty Mutual (carrier for Carpel) to determine their position and spoke to Thomas Dooley.  They have not picked up the defense of Macy's.  It is his position that our insured should pick up their tender; he was aware of our coverage position.  He will not make an offer until Macy's deposition is completed and said that Macy's does not typically make an offer until discovery is completed.

(D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 23.)  In Excelsior's view, the "tender" here necessarily referred to the June 9, 2016 tender letter addressed to CCC, again an assumption without factual support, particularly when the rest of the log note refers to the defense of, and positions taken by, Macy's.

Excelsior attempts to support its interpretation of "their tender" with the deposition testimony of Michael Parlin, the Selective representative, citing the following exchange:

> Q: So the third sentence there, "it is his position that our insured should pick up their tender."  What does that mean to you?
>
> A: He, Thomas Dooley, may have been speaking that we owe the tender for this claim.

(D.E. 49-2, Excelsior Moving Br. 9; D.E. 49-4, Excelsior R. 56.1 Stmt., ¶ 24.)  Parlin did not elaborate on what he meant by "this claim," and Excelsior's excerpt from the deposition leaves out important context: Parlin also testified that he did not recall the conversation beyond what the log note stated; that he doesn't recall that Excelsior was tendering Carpel's defense at that

17

point; that from his understanding of the log note, he does not believe Excelsior's representative referenced any prior tender; that Selective "never made a coverage position, at least at this point with respect to Carpel"; that "Selective never received this letter," referring to the June 9, 2016 letter; and that, to his knowledge, "at that point, we never received a tender letter." (D.E. 49-5, O'Connor Decl., Ex. 16, Parlin Dep., 21:3-22:24, 35:10-38:9, 47:4-13.) Dooley, the other party to that conversation, was similarly inconclusive, having testified that he "think[s]" there was one conversation with a Selective adjuster, and "generally speaking," he would have said he was following upon a tender (which he conceded preceded his involvement) and needed a response; he did not, however, recall what the Selective representative said. (D.E. 49-5, O'Connor Decl., Ex. 17, Dooley Dep., 14:20-16:7.) This evidence would not permit a reasonable trier of fact to conclude that Selective was on notice of a tender of Carpel's defense at the time of this conversation.[10]

In its reply brief, Excelsior points to yet another date when Selective was allegedly on sufficient notice of its duty to defend: November 28, 2016, the date by which Selective had received Carpel's third-party complaint against CCC in the Underlying Action. (D.E. 57, Excelsior Reply Br. 6.) Excelsior asserts that the third-party complaint alleged that there was a written contract between CCC and Carpel requiring CCC to provide custodial services for Macy's locations, including the Baychester store, and that Selective's claim notes make clear its awareness that Carpel asserted claims against CCC based on CCC's custodial services at that

---

[10] With its motion for summary judgment, Excelsior included a declaration from Dooley in which he claims to have "specifically reiterated" on the call "that Selective should be defending and indemnifying Carpel and Macy's as additional insureds under the policy issued to CCC." (D.E. 49-7, Dooley Decl. ¶ 5.) The declaration does not satisfactorily explain Dooley's sudden clarity about the discussion occurring five years earlier in 2018, clarity not apparent at his deposition in 2022, and the Court concludes that it does not raise a triable fact issue. *Daubert v. NRA Grp.*, 861 F.3d 382, 391 (3d Cir. 2017).

specific location pursuant to a contract with Carpel.  (*Id.* at 7.)  Selective may have understood the nexus to the Baychester store at that time,[11] but Excelsior points to nothing in that third-party complaint that would function as a tender of Carpel's defense to Selective.

Excelsior itself recognizes that "Selective's duty to defend Carpel in the Underlying Action incepted when it first received proper notice of tender" (*id.* at 2), and its arguments about the third-party complaint do not permit the reasonable conclusion that it made a proper tender at that time.

In short, Selective has demonstrated that the first time it had the necessary combination of a tender and the facts necessary to require a defense was June 4, 2020.  Excelsior has not raised any triable fact issue that would move that date up.  Summary judgment is warranted in Selective's favor on this claim, and no further reimbursement is due to Excelsior for Carpel's pre-June 4, 2020 defense costs in the Underlying Action.

### 2.  Duty to Indemnify

Excelsior also seeks a declaratory judgment that Selective is required to indemnify Carpel if a judgment is entered against it in the Underlying Action.  As Selective counters, an indemnity determination would be premature because the Underlying Action, which will adjudicate

---

[11] For this reason, the Court rejects Selective's argument that it could not have made a coverage determination earlier because it first received what it considers "the determining factor of coverage" – the work order adding the Baychester store to the subcontract's list of CCC-serviced Macy's locations – with the June 4, 2020 letter. (*See* D.E. 47-3, Selective Moving Br. 7.)  As discussed earlier, the duty to defend does not await conclusive evidence of liability or a determination of whether the claim is meritorious, *Burlington*, 766 F. Supp. 2d at 530; *W9/PHC Real Est. LP*, 407 N.J. Super. at 191, and Selective was not entitled to demand actual proof of the third-party complaint allegations to act on a duty to defend.  But it also was not required to assume a defense that had not been tendered to it, and which it therefore had no right to control.

whether and to what extent Carpel is liable for the loss claimed there, remains pending.[12]

Generally, "courts 'refrain from adjudicating whether an insurer has a duty to indemnify an

insured until after the insured is found liable for damages in an underlying action.'" *Hartford*

*Ins. Co. v. Dana Transp. Inc.*, 2018 WL 10152321, at *5 (D.N.J. May 18, 2018) (McNulty, J.)

(quoting *Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 353 (D. Del.

2009)).  The rationale, which applies here, is that while the underlying case remains pending the

question of indemnification has not ripened into a controversy between the parties and "'thus,

does not meet the Constitutional requirement that federal courts may only adjudicate actual cases

or controversies.'"  *Id.* (quoting *Evanston*, 635 F. Supp. 2d at 353).

In this circuit, the ripeness of a declaratory judgment action is assessed by considering

"(1) the adversity of the parties' interests; (2) the probable conclusiveness of a judgment; and (3)

the practical utility of judgment to the parties."  *Evanston*, 635 F. Supp. 2d at 352 (citing *Step–*

*Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)).  In *Evanston*, the court

concluded that an insurer's request for a declaration that it had no duty to indemnify its insured

for claims in a separate pending negligence suit was not ripe.  The court's rationale is instructive:

> Under the first prong of the *Step–Saver* test, the parties' interests are considered
> adverse when actual harm will result if the declaratory judgment is not granted.
> Here, the parties' interests are not yet adverse because the ultimate financial
> liability of [the insured], if any, in the Underlying State Action has not been
> determined. . . . In addition, the Court cannot conclude, under the second prong of
> the *Step–Saver* test, that a declaratory judgment on indemnification would be
> conclusive. The issue of indemnification depends on coverage issues which are
> necessarily intertwined with the facts from the Underlying State Action.
> Therefore, a ruling on the duty to indemnify before the resolution of the
> Underlying State Action may result in inconsistent and duplicative litigation, a
> result discordant with the conclusiveness prong of the *Step–Saver* test.  Further,
> the risk of duplicative and inconsistent litigation undermines the practical utility

---

[12] Selective has reported that mediation is scheduled to take place in the Underlying Action on
November 16, 2023.  (D.E. 62.)

of a judgment to the parties at this time, the third consideration under the *Step–Saver* test.

*Id.* at 353-54 (internal citations omitted).  Here, it is likewise unclear whether Carpel will ever be held financially liable in the Underlying Action; under the first prong, therefore, the parties' interests are not sufficiently adverse.  Additionally, while Excelsior insists that there can be only one scenario in which Carpel is held liable in the Underlying Action (if CCC acted negligently, assertedly triggering indemnity coverage from Selective), Selective describes a host of alleged proof problems with that position and asserts that Excelsior has not supplied a sufficient factual basis to establish that the allegations against Carpel were based on CCC's "ongoing operations." (*See* D.E. 53-1, Selective Opp. Br. 8-11.)[13]  Selective has not refused to indemnify Carpel, *cf. Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Loc. Union No. 66*, 580 F.3d 185, 191 (3d Cir. 2009) (party had "explicitly refused to indemnify" other party or hold it harmless); it argues that whether it has a duty to indemnify ultimately depends on determinations that must be made in the Underlying Action.  (D.E. 53-1, Selective Opp. Br. 10-11.)  In other words, "[t]he issue of indemnification depends on coverage issues which are necessarily intertwined with the facts from the [Underlying Action]," and a ruling on indemnity now "may result in inconsistent and duplicative litigation," undermining the conclusiveness and practical utility of a judgment from this Court now on indemnity.  *Evanston*, 635 F. Supp. 2d at 353-54.

Excelsior cites several cases in support of its argument that it should be permitted to pursue its indemnification claim now.  (D.E. 49-2, Excelsior Moving Br. 14; D.E. 57, Excelsior Reply Br. 15-16.)  They are inapposite.  The cited discussion from *Caldwell Trucking PRP Grp.*

---

[13] While the actual merits of a claim do not govern the duty-to-defend determination, the duty to indemnify is narrower.  *W9/PHC Real Estate LP*, 407 N.J. Super. at 191.

*v. Spaulding Composites Co.*, 890 F. Supp. 1247 (D.N.J. 1995), which involved contribution and coverage issues relating to environmental cleanup costs, concerned an "action against company" provision in the governing insurance policies. The provision stated that no action would lie against the insurer until the amount of the insured's liability had been determined by judgment after trial or by written agreement among the insured, the claimant, and the insurer. The court held that under New Jersey law, this policy language was not intended to allow an insurer to avoid a declaration of rights when it had allegedly "repudiated the contract and declined to furnish an agreed defense of a covered damage action"; as such, an insured could, despite the policy language, pursue declaratory judgment "on the issues of coverage and the insurer's duty to defend." *Id.* at 1258 (citations and internal quotation marks omitted).[14] There is no indication that this type of policy language is in play here, nor is the animating concern present; *i.e.*, that the insurer was withholding a defense.

*Crest-Foam Corp. v. Aetna Ins. Co.*, 320 N.J. Super. 509 (App. Div. 1990), likewise concerned an "action against company" provision and issues about indemnification for environmental cleanup costs. Similarly, *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210 (3d Cir. 1999), was a dispute over indemnification for environmental cleanup costs and did not involve concurrent liability and indemnification issues; the polluter notified its various insurers after entering into a consent order that admitted liability. *See id.* at 215.

Quoting from *Prudential Prop. & Cas. Ins. Co. v. Karlinski*, 251 N.J. Super. 457, 461 (App. Div. 1991), Excelsior argues that "[c]overage may be determined in a separate declaratory

---

[14] That declaration could not, however, be pursued in the action before the court due to a separate policy provision that prohibited the joinder of the insurer as a party to any action against the insured to determine the insured's liability, as well as the impleader of the insurer by the insured, language that the court enforced as written. *See id.*

action in advance of the tort proceeding."  (D.E. 49-2, Excelsior Moving Br. 14.)  Excelsior is correct that in some circumstances, a coverage determination need not await the outcome of the underlying lawsuit.  *See Flomerfelt*, 202 N.J. at 447 (where underlying coverage question cannot be decided from face of complaint, insurer must provide a defense until all potentially covered claims are resolved, and resolution "may be through adjudication of the complaint or in a separate proceeding between insured and insurer *either before or after that* decision is reached" (emphasis added)).  *Prudential*, which concerned the applicability of a policy exclusion for bodily injury "expected or intended by the insured" and involved both negligence and intentional tort claims asserted in an underlying suit, was such a case.  *See* 251 N.J. Super. at 461 ("We note first that the above-quoted policy exclusion of coverage for bodily injury which is expected or intended by the insured is valid and enforceable . . . and that coverage may be determined in a separate declaratory action in advance of the tort proceeding, . . . where the result of the negligence case will not be determinative of the insurer's responsibility." (internal citations omitted)).

But Excelsior has not shown why it is necessary *here* for the Court to adjudicate the issue of indemnification now (as opposed to the issue of defense, which is not in issue),[15] before the underlying liability has been determined.  *Cf. id.* at 445-47 (discussing when it may be appropriate to decide coverage questions, and thus duty to defend, before underlying trial happens, such as whether the underlying action asserts covered (negligence-based) and not covered (intentional acts) theories of recovery).

---

[15] *Flomerfelt*, 202 N.J. at 444 ("Although a definitive conclusion that a policy by its terms affords no coverage, and therefore that there is no duty of indemnification, also means that there is no duty to defend, coverage questions may not have clear answers in advance of discovery or trial. As a result, courts are often required to evaluate whether the insurer owes its insured a *duty to defend* in advance of a conclusive decision about coverage." (emphasis added)).

Excelsior's indemnity request on Carpel's behalf is not ripe; accordingly, that portion of Excelsior's complaint seeking a declaration that Selective is obligated to indemnify Carpel in the Underlying Action is dismissed without prejudice.

### 3. Primary vs. Excess

The Court is also unpersuaded that there is a live dispute over which policy, Selective's or Excelsior's, is primary with respect to Carpel.  Although Excelsior's moving brief argues for a ruling that Selective's policy is primary (a request Selective opposes, but does not address in its own motion),[16] it also asserts in its reply that Selective has conceded its policy is primary by accepting the tender of Carpel's defense.  (*See* D.E. 57, Excelsior Reply Br. 17.)  Having reviewed the relevant policy language and the parties' arguments, the Court concludes that in substance, Excelsior is prematurely seeking a ruling that would relate to indemnity coverage (which, as discussed above, is not ripe for consideration).

As a general matter, when two insurance policies are in play for a given loss, courts scrutinize the policies' language, in particular their "other insurance" provisions, to ascertain whether one or the other is primary or excess, and if the policies apply at the same level (*i.e.*, both are primary, or both are excess), how a required payout should be allocated among them. *See Carolina Cas. Ins. Co. v. Travelers Prop. Cas. Co.*, 90 F. Supp. 3d 304, 309, 322 (D.N.J. 2014) (McNulty, J.); *W9/PHC Real Estate LP*, 407 N.J. Super. at 199.

Here, Excelsior and Selective each point to the "other insurance" language in their respective policies and urge the Court to reach differing conclusions: Excelsior argues that the Court should "hold and determine that the Selective Policy applies primary as compared to the

---

[16] Selective has also not sought summary judgment on its first counterclaim, which appears to seek a declaration that if it owes additional insured coverage in the Underlying Action, its policy is excess to the Excelsior policy.  (D.E. 4, at 13 ¶ 12.)

Excelsior Policy" (D.E. 49-2, Excelsior Moving Br. 17); Selective contends that its policy is

excess, but also hedges that the purported "lack of clarity in the contract" (referring to the

subcontract between Carpel and CCC)[17] and in the Excelsior policy "raises issues of which

coverage is primary should both policies provide coverage" (D.E. 53-1, Excelsior Opp. Br. 12).

The reason for Selective's hedge becomes apparent on review of the "other insurance"

language in its policy, which read as follows:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we
cover . . . our obligations are limited as follows:

    **a.  Primary Insurance**

This insurance is primary except when Paragraph b. below applies.  If this
insurance is primary, our obligations are not affected unless any of the other
insurance is also primary.  Then, we will share with all that other insurance by
the method described in Paragraph c. below.

(Selective Policy, CG 00 01 12 07, at 12 of 16, ¶ 4.)  Paragraph b, in turn, addresses excess

insurance, and an endorsement adds the following language to it:

This insurance shall be excess with respect to any person or organization included
as an additional insured under this policy, any other insurance that person or
organization has shall be primary with respect to this insurance, unless:

  (1)  The additional insured is a Named Insured under such other insurance;
  (2)  You have agreed in a written contract, written agreement or written permit to
     include that additional insured on your General Liability policy on a primary
     and/or non-contributory basis; and

---

[17] Selective is referring to its argument that for its policy to be primary, and not excess, as to an
additional insured, one of the requirements is that CCC agreed in a "written contract, written
agreement or written permit to include" Carpel on CCC's liability policy "on a primary and non-
contributory basis."  (D.E. 47-2, Selective R. 56.1 Stmt., Ex M (Selective Policy), CG 00 01 12
11, at 7 of 8, Primary and Non-Contributory Provision.)  Selective contends that the subcontract
required a certificate of insurance evidencing coverage that is primary and noncontributory,
rather than directly requiring such coverage, and asserts that would not satisfy the policy's
requirements.

(3) The written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury."

(Selective Policy, CG 72 02 12 11, at 7 of 8.)

The key passage appears in paragraph 4(b)(2), which explains the implications of the

Selective Policy being excess:

> ***When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".*** If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Selective Policy, CG 00 01 12 07, at 12 of 16, ¶ 4 (emphasis added).)  Here, Selective has

acknowledged its duty to defend Carpel under the policy, and its reservation of rights made no

reference to any entitlement to refuse a defense because its policy is excess or that it was

undertaking to defend Carpel despite having excess status.  (*See* D.E. 47-2, Selective R. 56.1

Stmt., ¶ 27 & Ex. C (Selective 7/1/2020 ltr.); D.E. 49-6, Jones Decl., ¶ 8 & Ex. 5 (Selective

8/20/2020 ltr.).)  There is no dispute that Selective has now accepted the tender of Carpel's

defense.  That development means that the present relevance of an "excess versus primary"

declaration concerns the allocation of responsibility among the insurers for any loss Carpel is

deemed liable for—a contingency that has not happened, and may never happen.  (*See* Selective

Policy, CG 00 01 12 07, at 12 of 16, ¶ 4(b)(3)-(4), (c) (discussing how loss amount would be

shared); D.E. 49-6, Jones Decl., Ex. 1 (Excelsior Policy), CG 00 01 10 01, at 11-12 of 16, ¶ 4

("other insurance" provision).)  Because the parties have presented no ripe controversy regarding

whether the Selective Policy is primary, the Court will not adjudicate that issue.

### 4.  Fees and Costs

Excelsior seeks an award of attorney's fees and costs for what it has incurred to prosecute

this declaratory judgment award.  Under N.J. Court Rule 4:42-9(a)(6), a fee award is allowable

"[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." A "successful claimant" is a party that "succeeds on any significant issue in litigation which achieves some benefit the parties sought in bringing suit," and includes one that "obtains a favorable adjudication on the merits on a coverage question as the result of the expenditure of counsel fees." *Occhifinto v. Olivo Const. Co., LLC*, 221 N.J. 443, 450 (2015) (cleaned up).

Rule 4:42-9(a)(6), an exception to the default rule that parties bear their own legal fees, aims to "discourage[] insurance companies from attempting to avoid their contractual obligations and force their insureds to expend counsel fees to establish the coverage for which they have already contracted." *Id.* at 449-50; *see also Sears Mortg. Corp. v. Rose*, 134 N.J. 326, 356 (1993) (purpose is to "discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection") (cleaned up). Even when the rule applies, whether to award fees as a matter of the court's discretion. *Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.*, 206 N.J. 596, 619 (2011).

Here, Excelsior is not a "successful claimant"; it did not "achieve[] some benefit [it] sought in bringing suit." *Occhifinto*, 221 N.J. at 450. By the time it sued, Selective had already agreed to provide Carpel with a defense. The other relief Excelsior seeks – a declaration that Selective must indemnify Carpel, and that the Selective Policy is primary – is not the subject of a ripe controversy. Neither the text nor the policy rationale of Rule 4:42-9(a)(6) is implicated on the facts, and no fee award is warranted.[18]

---

[18] Whether a fee award would be appropriate if the indemnification issue later ripens into a justiciable dispute on which Excelsior (or Carpel) then prevails is not before the Court. *See, e.g.*, *Yurcisin v. Fleming*, 2022 WL 829803, at *6 (App. Div. Mar. 21, 2022) ("Because the coverage issue remains undecided, [litigant] is not yet 'a successful claimant' entitled to a counsel fee award under Rule 4:42-9(a)(6)."); *cf. Messec v. USF & G. Ins.*, 369 N.J. Super. 61, 64 (App. Div.

### B.  Selective's Obligations to Macy's

Macy's seeks summary judgment on its counterclaim against Selective asserting that Selective owes it a defense in the Underlying Action as an additional insured.[19]  Selective counters that Macy's does not qualify as an additional insured under the policy because there is no writing requiring it to be so covered, and has moved for summary judgment that it has no duty to defend or indemnify Macy's in the Underlying Action.

Both arguments are based on the interplay between the Selective Policy's definition of who qualifies as an "additional insured" and certain language in the subcontract between Carpel and CCC.  The parties do not dispute the relevant language, only its import.  First, the Selective Policy.  By endorsement, the section defining who qualifies as an insured is amended to include "as an additional insured any person or organization whom you have ***agreed in a written contract, written agreement or written permit*** that such person or organization be added as an additional insured on your policy."  (Selective Policy, CG 00 01 12 11, at 5 of 8, Blanket Add'l Insureds – As Required By Contract (emphasis added).)  "You" is defined as the named insured; *i.e.*, CCC.  (*Id.*, CG 00 01 12 07, at 1 of 16.)  For Macy's to qualify as an additional insured under this provision, then, CCC must have "agreed in a written contract, written agreement or written permit that [Macy's] be added as an additional insured" on the Selective policy.

_____

2004) (affirming trial court's discretionary decision not to award counsel fees under Rule 4:42-9(a)(6) in dispute between two insurers, as opposed to dispute between insured and insurer), *cited in* D.E. 53-1, Selective Opp. Br. 13; *Tooker v. Hartford Acc. & Indem. Co.*, 136 N.J. Super. 572 (App. Div. 1975) (allowing fees in dispute between insurers), *cited in* D.E. 48-18, Macy's Moving Br. 12-13.

[19] The counterclaim Macy's asserted against Excelsior, which in substance seeks the same relief against that insurer as it seeks now against Selective, is not the subject of any of the motions presently before the Court.

Next, the Carpel-CCC subcontract, which Macy's points to as the qualifying agreement. The subcontract requires the following:

> Subcontractor shall maintain insurance in the following minimum amounts, naming Contractor (and upon Contractor's request, the owner of the premises where services are performed and any other persons designated by the Contractor) as an additional insured.

(D.E. 49-8, S. Carpel Decl., ¶ 9 & Ex. 11 at § 11.)  The subcontract's first paragraph defines "Subcontractor" as CCC and "Contractor" as Carpel, meaning that CCC was required to maintain certain minimum insurance naming Carpel and, **if Carpel requested,** the owner of the premises where services are performed and any other designees, as additional insureds.

Macy's points to no writing embodying Carpel's request to CCC to name Macy's as an additional insured on CCC's policy or CCC's agreement to do so.  Instead, it argues that the subcontract itself represents the "written agreement" required under the Selective policy, citing deposition testimony by Scott Carpel, the owner of Carpel, that he requested that CCC obtain insurance for the benefit of Macy's and that CCC's principal understood this requirement and agreed to do so.  (D.E. 48-18, Macy's Moving Br. 9-11; D.E. 48-17, Macy's R. 56.1 Stmt., ¶¶ 16-17.)

Notwithstanding Macy's strenuous argument to the contrary, the language of the subcontract does not directly require CCC to add Macy's as an additional insured; CCC's obligation to do so is only triggered by a contingent event extrinsic to the language of the contract, that is, a request from Carpel.  Contract terms are to be given their "plain and ordinary meaning," and courts are not permitted to "rewrite a contract for the parties better than or different from the one they wrote for themselves."  *Kieffer v. Best Buy*, 205 N.J. 213, at 223 (2011).  Adopting the contractual interpretation put forth by Macy's would substitute what the

subcontract actually says with what Macy's believes it should say based on subsequent events; *i.e.*, Scott Carpel's alleged request and CCC's alleged receipt and understanding of that request.

While the Selective policy is flexible as to the form the agreement must take – it can be a written contract, a written agreement, or written permit – the constant is that it must be in writing. That term is clear, and therefore "must be enforced as written . . . in order that the expectations of the parties will be fulfilled." *Flomerfelt*, 202 N.J. at 441. Macy's argument depends on a combination of a written agreement (the subcontract) and a verbal request (from Scott Carpel to CCC's principal). This does not satisfy the writing requirement in the Selective policy, and therefore Macy's does not qualify as an additional insured under that policy and is not entitled to coverage.

Summary judgment is warranted in Selective's favor and against Macy's on the first counterclaim asserted by Macy's. Because Macy's is not a "successful claimant," it is not entitled to fees under N.J. Court Rule 4:42-9(a)(6).

## V.    Conclusion

For the reasons set forth above, Excelsior's motion for summary judgment is denied. Selective's motion is granted. Macy's motion is denied. The parties shall appear before Magistrate Judge Waldor for a schedule for the prompt disposition of the remaining claims in this action.

<br>

<br>

Date: September 29, 2023

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.